UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ROY WEEKES,

                          Plaintiff,

        v.

JETBLUE AIRWAYS CORPORATION, FRANK
AYALA and WARREN GREEN, *in their official
and individual capacities*, and JOHN DOE and
JANE DOE, *individually*,

                          Defendants.

**MEMORANDUM & ORDER**
21-CV-1965 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Roy Weekes commenced the above-captioned action on November 24, 2020,

against JetBlue Airways Corporation ("JetBlue"), Frank Ayala and Warren Green in their official

and individual capacities, and John and Jane Doe individually, in New York State Supreme

Court, Kings County, alleging claims of discrimination, retaliation, failure to provide reasonable

accommodations, and negligent and intentional infliction of emotional distress.  (Summons &

Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.)  JetBlue, Ayala, and

Green removed the action to the Eastern District of New York on April 12, 2021.  (Notice of

Removal, Docket Entry No. 1.)  On July 9, 2021, Plaintiff filed an amended complaint alleging

that Defendants discriminated and retaliated against him based on his age, race, gender, and

disability and failed to provide reasonable accommodations in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act,

42 U.S.C. § 12101 *et seq.* ("ADA"); the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621 *et seq.* ("ADEA")[1]; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").  (Am. Compl. ¶¶ 1–2, Docket Entry No. 14.)  Plaintiff also brings aiding and abetting claims under the NYSHRL and NYCHRL, interference claims under the NYCHRL, and state law claims of negligent and intentional infliction of emotional distress ("NIED" and "IIED," respectively).  (*Id.* ¶¶ 228–31, 246–53, 278–80.)

Defendants move to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[2]  For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## I.   Background

### a.   The parties

Plaintiff is an African-American male who is over sixty years old and has suffered from asthma for over thirty years.[3]  (Am. Compl. ¶¶ 40–43.)  On or about October 9, 2007, Plaintiff was hired by JetBlue as a Grounds Operations employee.  (*Id.* ¶ 44.)  Plaintiff loaded and offloaded bags and luggage onto and off aircraft, worked in the "bag room," and performed "lavatory and water services."  (*Id.* ¶¶ 44–45.)  Plaintiff was recognized by JetBlue for his work and was awarded one of JetBlue's "Lift Awards" for his "exceptional" work performance in

---

[1]  Plaintiff subsequently withdrew his cause of action under the ADEA.  (Pl.'s Opp'n to Defs.' Mot. 1 n.1, Docket Entry No. 21.)  However, he maintains his age discrimination and hostile work environment claims under the NYSHRL and NYCHRL.

[2]  (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 23; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 23-1; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 21; Defs.' Reply Mem. in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 24.)

[3]  The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order.

2

2017, 2018, and 2019.  (*Id.* ¶ 49.)  Plaintiff "readily assisted other employees and volunteered for duties and responsibilities requested by some of his supervisors and managers."  (*Id.* ¶ 50.)  He never received any warnings or suspensions.  (*Id.*)

JetBlue is "the seventh largest airline in the United States by passengers carried."  (*Id.* ¶ 11.)  It operates over 1,000 flights daily and serves 100 domestic and international destinations in the United States, Mexico, the Caribbean, Central America, and South America.  (*Id.*)  JetBlue's principal place of business is in Long Island City, New York.  (*Id.* ¶ 10.)  Ayala was a manager at JetBlue with managerial and/or supervisory responsibilities over Plaintiff during all relevant times.  (*Id.* ¶¶ 18–22, 24–26.)  Ayala worked as a Manager for Drug & Alcohol Compliance.  (*Id.* ¶ 23.)  Green was the Manager of Ground Operations at JetBlue with managerial and/or supervisory responsibilities over Plaintiff during all relevant times.  (*Id.* ¶¶ 27–35.)

### b.   October 15, 2019 incident and breathalyzer tests

On October 15, 2019, Plaintiff was working in the bag room handling bags on Belt #4.  (*Id.* ¶ 52.)  At approximately 10 PM, as Plaintiff was driving out of the bag room to deliver bags to the aircraft, one of the bag doors malfunctioned on Belt #4.  (*Id.* ¶ 53.)  The door to the bag room had been malfunctioning for weeks and Plaintiff did not cause the accident.  (*Id.* ¶ 54.)  Plaintiff believes that JetBlue was aware of the malfunctioning door but did not take steps to properly fix it.  (*Id.*)  Plaintiff immediately reported the incident to Loudes Torres, JetBlue's Supervisor of Ground Operations.  (*Id.* ¶ 55.)

At approximately 10:30 PM, Harold Pettiton, JetBlue's Supervisor of Safety, met with Plaintiff and took him to his office.  (*Id.* ¶ 56.)  Pettiton informed Plaintiff that in compliance with JetBlue's drug testing policies and procedures, Plaintiff had to take a drug test and Pettiton had to call someone to administer the test.  (*Id.* ¶¶ 57–58.)  Plaintiff contends that he was "not

the subject of a random drug test" and that his drug test should have been conducted in accordance with the post-accident regulations, policies, and procedures maintained by JetBlue and mandated by the United States Department of Transportation (the "DOT"). (*Id.* ¶¶ 59–60.) Plaintiff informed Pettiton that he did not drink any alcohol or use any drugs and that the door for the bag room "simply malfunctioned." (*Id.* ¶ 63.)

At approximately 11:15 PM, Joyce Lall, an "employee, contractor, independent contractor, and/or agent of JetBlue" arrived to perform the drug test. (*Id.* ¶¶ 64–65.) Lall requested that Plaintiff take a "breathalyzer" test. (*Id.* ¶ 68.) Plaintiff fully complied but had difficulty blowing into the breathalyzer because he was asthmatic and suffering from severe nasal and sinus polyps. (*Id.* ¶¶ 69–72.) Plaintiff informed Lall that he was having difficulty breathing and was scheduled to have surgery the following day, October 16, 2019. (*Id.* ¶ 71.) Plaintiff then told Lall that his chest was tightening and asked whether there was another way that he could take the test, since JetBlue's and DOT's drug testing policies allow alcohol tests to be performed by either saliva or breath. (*Id.* ¶¶ 74–75.) Lall observed Plaintiff's "physical distress" while taking the breathalyzer test. (*Id.* ¶ 76.) Lall called Ayala, who was the Manager for Drug & Alcohol Compliance, and left the room to speak with Ayala in private for about three to five minutes. (*Id.* ¶¶ 77–78.) Lall then returned to the room and told Plaintiff that Ayala wished to speak with him. (*Id.*)

Plaintiff informed Ayala that he did not use any alcohol or illegal drugs, that he was asthmatic, and that he "was coughing, having difficulty breathing, and his chest was tightening." (*Id.* ¶¶ 79–80.) Plaintiff asked Ayala whether he could take the breathalyzer test another way.

4

(*Id.* ¶ 81.)  He also informed Ayala that he was scheduled to have surgery the next day.[4]  (*Id.*)  Ayala "completely and summarily refused to discuss . . . any other methods of testing and dismissively told Plaintiff" that if he could not blow into the breathalyzer, they would "just have to part ways."  (*Id.*)  Plaintiff alleges that Ayala treated him in a "dismissive and hostile manner" and "refused to engage Plaintiff in any dialogue regarding the existence of an alternative form of testing."  (*Id.* ¶¶ 82–83.)

Lall performed the test on Plaintiff twice, but due to Plaintiff's asthma, he had difficulty blowing enough air into the breathalyzer.  (*Id.* ¶ 84.)  Lall called Ayala again and left the room for five minutes.  (*Id.* ¶ 85.)  She then returned to the room.  (*Id.*)  Ayala informed Lall that she had to administer the breathalyzer test three times.  (*Id.* ¶ 86.)  Plaintiff asked Lall if he could take the test in another way but she stated that she "only had the equipment for the breathalyzer" and that "he had only one more chance to pass the test."  (*Id.* ¶ 87.)  Plaintiff had difficulty blowing enough air into the breathalyzer for the third test.  (*Id.* ¶ 88.)  Defendants did not "document or observe any signs of intoxication such as slurred speech."  (*Id.* ¶ 176.)

After Plaintiff took the breathalyzer test three times, Lall requested that Plaintiff take a urine test, which came back negative.  (*Id.* ¶¶ 89–90.)  Despite this, Ayala immediately suspended Plaintiff and told him that he should not report back to work until further notice.  (*Id.* ¶¶ 91–92.)  Ayala informed Plaintiff that he would have to take a "shy lung" examination and that he would contact Plaintiff with information on where and when to take the shy lung examination.  (*Id.* ¶ 93.)

---

[4]  Plaintiff alleges that he was scheduled to have surgery "later that day," but the Court presumes that this is an error, as Plaintiff otherwise indicates that he was scheduled to have surgery the following day, and underwent surgery on October 16, 2019.  (Am. Compl. ¶¶ 81, 94, 111.)

On October 15, 2019, while turning in his employment credentials, Plaintiff was told by other supervisors that "they never heard of an employee being terminated with a negative 'pee' result." (*Id.* ¶ 189.)

### c.   Plaintiff's subsequent examination by JetBlue doctors

Plaintiff underwent outpatient surgery on October 16, 2019 for severe nasal and sinus polyps. (*Id.* ¶¶ 94, 110.)  On or about October 22, 2019, Ayala told Plaintiff to make an appointment at the Concentra Newark New Jersey clinic (the "Clinic") for a shy lung exam. (*Id.* ¶ 95.)  "Upon information and belief," the Clinic conducts alcohol and drug testing for JetBlue, has a contract or agreement to administer such testing for JetBlue, conducts other medical examinations of JetBlue employees for JetBlue, and has a contract or agreement to "provide medical care or perform medical examinations or medical reviews of JetBlue employees for JetBlue." (*Id.* ¶¶ 99–102.)  Plaintiff explained that he was recovering from surgery and asked whether he could attend a testing facility or doctor's office closer to home. (*Id.* ¶ 96.)  Ayala refused and directed Plaintiff to visit the Clinic, "which was in another state over two . . . hours away" and which required him to take two trains and a bus. (*Id.* ¶ 97.)

On October 24, 2017, Plaintiff went to the Clinic but was told upon arriving that JetBlue had not scheduled or approved his appointment.[5] (*Id.* ¶¶ 103–04.)  The Clinic called JetBlue to confirm that Plaintiff was sent there by the company to take a shy lung exam. (*Id.* ¶ 106.)  Plaintiff waited for over an hour to see a doctor and then was examined by Dr. Purvee Patel. (*Id.* ¶¶ 108, 111.)  Plaintiff provided her with documentation from his primary care doctor and surgeon advising of his asthma and recent surgery for severe nasal and sinus polyps.

---

[5]  Plaintiff alleges that Ayala "deliberately failed to properly schedule" his appointment. (Am. Compl. ¶ 107.)

(*Id.* ¶ 110.)  Dr. Patel spoke to Plaintiff's surgeon.  (*Id.* ¶ 111.)  In her medical evaluation report to JetBlue, Dr. Patel noted that JetBlue should consider sending Plaintiff for an independent pulmonology examination.  (*Id.* ¶ 120.)  Dr. Patel also noted that JetBlue should consider repeating the breathalyzer test, but that there should not be any testing done for up to six to eight weeks due to Plaintiff's surgery on October 16.  (*Id.* ¶ 121.)  Plaintiff asked Dr. Patel for a complete copy of the medical report and findings, but Dr. Patel told Plaintiff that she would only give her report to JetBlue because they "were the ones paying her."  (*Id.* ¶¶ 122–23.)

Plaintiff claims that Ayala and JetBlue were required to provide the examining physician with "certain information and instructions."  (*Id.* ¶¶ 111–14.)  Plaintiff alleges that JetBlue and Ayala: (1) did not instruct Dr. Patel or the Clinic that Plaintiff was required to take a breathalyzer test but was unable to provide enough air to complete the test, (2) did not inform Dr. Patel of the consequences for a refusal to take the required alcohol test, and (3) did not ensure that Plaintiff was examined by a doctor with expertise in the medical issues raised by Plaintiff's inability to pass the breathing test, since Dr. Patel is a family medicine specialist rather than a doctor with an expertise in pulmonology or respiratory ailments.  (*Id.* ¶¶ 115–19.)  Plaintiff "never refused to participate or take any drug test or medical exam."  (*Id.* ¶ 126.)

### d.  Plaintiff's medical documentation

Plaintiff provided JetBlue with additional documentation of his medical condition.  (*Id.* ¶ 132.)  By letter dated October 22, 2019, Plaintiff's doctor certified that he had been under medical care for asthma for thirty years (the "October 22 Letter").  (*Id.* ¶ 133.)  At least twice, Plaintiff "had to be incubated for acute bronchial asthma."  (*Id.*)  The letter provided contact information for the doctor and noted that she could be reached if Defendants had any questions.  (*Id.*)  By letter dated October 23, 2019, Plaintiff's medical surgeon noted that he was "under his

care for severe nasal/sinus polyps" and that due to Plaintiff's condition, he had been unable to complete the breathalyzer test administered on October 15 (the "October 23 Letter").  (*Id.* ¶ 134.) JetBlue and Ayala did not contact Plaintiff's doctors.  (*Id.* ¶ 135.)

### e.   Plaintiff's termination

On or about October 25, 2019, Plaintiff told Ayala that he "could not afford to lose [his] job . . . so close to retirement."  (*Id.* ¶ 136.)  He expressed that he felt as though he was being treated unfairly and questioned why he was being singled out and treated differently from other colleagues who passed the urine test and were not terminated.  (*Id.*)  He told Ayala that he would reach out for help and report him.  (*Id.*)

On or about October 27, 2019, Ayala called Plaintiff to inform him that he was going to be terminated and that he should expect a call from one of his supervisors.  (*Id.* ¶ 137.)  Plaintiff again stated that he did not use any alcohol or illegal drugs and had difficulty breathing due to asthma; he asked for a reasonable accommodation such as taking the test again or taking a different test.  (*Id.* ¶¶ 137–39.)

The following day, Plaintiff received a call from Green, the Manager of Ground Operations, who told Plaintiff that he had spoken to Ayala and that Plaintiff would be fired. (*Id.* ¶ 145.)  Plaintiff again explained the events of October 15, 2019, including his medical condition.  (*Id.* ¶ 146.)  Plaintiff asked Green to reconsider his termination, but Green refused. (*Id.* ¶¶ 148–50.)  Plaintiff told Green that he was going to reach out to Crew Relations "because he felt that he was being treated unfairly" but Green did not "report or thoroughly investigate Plaintiff's claims of unfair treatment, discrimination, and harassment."  (*Id.* ¶¶ 151–52.)

After his conversation with Green, Plaintiff reached out to several JetBlue departments to report that he was the subject of discrimination.  (*Id.* ¶¶ 153–54.)  Plaintiff also told both Ayala

and Green that he was going to report the discriminatory conduct to human resources.

(*Id.* ¶ 157.)  On October 29, 2019, Plaintiff sent an email to JetBlue's "People Department" and

Crew Relations, among others, informing them that he had been unable to complete the

breathalyzer test because of his asthma and that his urine test had come back negative.  (*Id.* ¶¶

158, 161.)  He also stated that his doctors had provided letters about his medical condition but

that these letters had been ignored.  (*Id.* ¶ 162.)  No one contacted Plaintiff regarding his report

and claims of discrimination.  (*Id.* ¶ 164.)

On November 1, 2019, JetBlue terminated Plaintiff for violation of company policy.  (*Id.*

¶ 167.)  Plaintiff received a letter from JetBlue dated November 7, 2019, stating:

> Recently you participated in a drug and/or alcohol test in accordance
> with the JetBlue Airways drug and alcohol compliance program.  As
> you are aware, a physician's review could not establish a valid
> medical reason for your inability to provide a sufficient breath
> sample.  This is considered a refusal to test.

(*Id.* ¶ 168.)  The letter also provided contact information for a substance abuse professional.  (*Id.*)

Plaintiff alleges that he was treated less favorably than other younger, white Ground

Operations employees, such as Phil Patankoliau.[6]  (*Id.* ¶ 179.)  Plaintiff also alleges that other

Ground Operations employees with Plaintiff's duties and responsibilities have been involved in

similar vehicle accidents but were not held to "heightened scrutiny and discriminatory practices."

(*Id.* ¶ 180.)  Other employees, such as Emmanuel Tuner, were subjected to drug testing after a

vehicle accident but were not terminated after passing the urine test.[7]  (*Id.*)

---

[6]  Plaintiff does not allege comparable conduct by Mr. Patankoliau.  (*See generally* Am. Compl.)

[7]  Plaintiff does not allege Mr. Tuner's race.  (*Id.*)

####  f.    Post-termination actions

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") on or about August 24, 2020 (the "EEOC Charge"), (*id.* ¶ 36), and

received a Notice of Right to Sue on or about August 27, 2020, (*id.* ¶ 37).  Plaintiff timely

commenced the action within ninety days of receiving the Notice of Right to Sue.  (*Id.* ¶ 38.)

Plaintiff also served a copy of his Amended Complaint on the New York City Human Rights

Commission and Corporation Counsel of the City of New York pursuant to New York City

Administrative Code § 8-502(c).  (*Id.* ¶ 39.)  Plaintiff alleges that he was discriminated against

because of his race, age, gender, and actual and/or perceived disability.  (*Id.* ¶¶ 182–85.)

Plaintiff also claims that Defendants refused him a reasonable accommodation, such as

conducting a saliva test.  (*Id.* ¶¶ 199–200.)

## II.    Discussion

###  a.    Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. N.Y.*

*Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145

(2d Cir. 2020).  A complaint must plead "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d

533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir.

2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reins. Ltd. v. Shubin*

*Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the Amended Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

**b.  Discrimination claims under the ADA, Title VII, NYSHRL, and NYCHRL**

Defendants argue that Plaintiff's age, race, gender, and disability discrimination claims under the ADA, Title VII, NYSHRL, and NYCHRL should be dismissed because "Plaintiff does not plausibly allege any facts that even remotely suggest that he was terminated because of his membership in those classes." (Defs.' Mem. 8–11.) Further, Defendants argue that Plaintiff fails in his attempts to allege similarly-situated comparators because he fails to provide any further details about the comparators, including their ages, disabilities, employment histories and backgrounds, and supposedly preferential treatment. (*Id.* at 9–10.) Finally, Defendants argue that Plaintiff's discrimination claims should also be dismissed because from the face of the Amended Complaint, it is clear that JetBlue terminated Plaintiff based on a "legitimate, non-discriminatory reason," namely Dr. Patel's determination that "Plaintiff had intentionally refused to complete the drug and alcohol test provided to him on October 15." (*Id.* at 11.)

Plaintiff contends that his claims for disability discrimination are actionable, as he has a disability as defined under the ADA, NYSHRL, and NYCHRL. (Pl.'s Opp'n 1–3.) He also argues that at all relevant times, "Defendants were aware that [Plaintiff] is a Black man over the age of [sixty]" and that how he was treated, including the difficulty he faced in pursuing his appointment at the Clinic, "reveals that his race, gender, and age were also motivating factors." (*Id.* at 11.) Plaintiff also argues that he was treated less favorably than his co-workers, including

a "white[,] younger ground operation crew member" who was not held to heightened scrutiny.[8] (*Id.* at 17.)

### i. ADA, NYSHRL, and NYCHRL disability discrimination claims

### 1. ADA claim

To establish a prima facie case of discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010); *see Gorbea v. Verizon N.Y. Inc.*, No. 20-CV-3486, 2021 WL 4851389, at *2 (2d Cir. Oct. 19, 2021) (listing the four requirements for a prima facie ADA case and quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam)); *Jones v. N.Y.C. Transit Auth.*, 838 F. App'x 642, 643 (2d Cir. 2021) (same); *see also Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 48–49 (2d Cir. 2014) (outlining requirements for prima facie case under the ADA) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)).  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities include standing, lifting, bending, speaking, and working.  *Id.* § 12102(2)(A).  Under the EEOC's regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and 'is not meant to be a demanding standard.'"

---

[8]  Plaintiff does not provide additional information about the conduct and allegedly preferential treatment.

*Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 n.3 (2d Cir. 2014) (alteration in original) (quoting 29 C.F.R. § 1630.2(j)(1)(i)).  As a result, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  *Id.* (alteration in original) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)); *see Woolf*, 949 F.3d at 94 (noting that "the definition of 'disability' is not an exacting one").

The parties do not dispute that (1) JetBlue is subject to the ADA; (2) Plaintiff suffers from a disability within the definition of the ADA, namely asthma; and (3) Plaintiff was qualified to perform the essential functions of his job, with or without reasonable accommodations.  The Court therefore only considers the fourth prong, whether Plaintiff suffered an adverse employment action because of his disability.

Plaintiff has sufficiently alleged the causality element of a prima facie case.  Plaintiff experienced adverse employment actions by being suspended and terminated.  (Am. Compl. ¶¶ 91, 167); *see Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (holding that an adverse employment action for purposes of a discrimination claim is a "materially adverse change in the terms and conditions of employment" and includes "termination of employment, a demotion . . . , [or] a less distinguished title").  Plaintiff has also plausibly alleged that he suffered these adverse employment actions because of his disability.  He was unable to complete his mandatory breathalyzer test due to his asthma, told Lall and Ayala about his disability, and was suspended as a result of not being able to take the test.  (Am. Compl. ¶¶ 70–71, 80–87, 91.)  After being suspended, he was ordered to take a "shy lung" examination, which Plaintiff was ultimately unable to do because he could not perform spirometry or other breathing tests for several weeks following his surgery for nasal polyps.  (*Id.* ¶¶ 91–93, 121.)  Dr. Patel, the

13

examining physician, recommended that Plaintiff be sent for an independent pulmonology examination and that JetBlue consider repeating the breathalyzer test after a few weeks.  (*Id.* ¶¶ 120–21.)  JetBlue refused to consider alternative options to the breathalyzer and terminated Plaintiff's employment.  (*Id.* ¶¶ 138, 148–50.)  As JetBlue stated in Plaintiff's termination letter, a "physician's review could not establish a valid medical reason for [his] inability to provide a sufficient breath sample" and this was "considered a refusal to test."  (*Id.* ¶ 168.)

Plaintiff has met his burden of giving "plausible support to a minimal inference of discriminatory motivation," *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).  By alleging that he was suspended and fired because of his inability to take a breathalyzer test, he has sufficiently alleged that the "adverse action[s] [were] imposed because of [his] disability."  *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)).  Further, "[t]erminating a disabled employee . . . who can perform the essential functions of the job but cannot return to work because the employer has denied his request for reasonable accommodation, is disability discrimination under the ADA."  *Kinneary*, 601 F.3d at 156 (alterations in original) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000)).

## 2.   NYSHRL and NYCHRL claims

Because Plaintiff has alleged a disability claim under the ADA, he has also alleged disability claims under the less demanding NYSHRL and NYCHRL.

Historically, discrimination claims under the NYSHRL were "largely subject to the same analysis [courts] apply under Title VII."  *Reyes v. Westchester County Health Care Corp.*, No. 21-0410, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021) (citing *Brown v. Daikin Am. Inc.*, 756

14

F.3d 219, 226 (2d Cir. 2014)); *see Williams v. MTA Bus Co.*, No. 17-CV-7687, 2020 WL 1922911, at *5 (S.D.N.Y. Apr. 20, 2020) (same).  However, in June of 2019, New York State amended the NYSHRL, "the effect of which is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL."[9] *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *DeAngelo v. MAXIMUS/NY Medicaid Choice*, No. 19-CV-7957, 2022 WL 3043665, at *12 n.15 (S.D.N.Y. Aug. 2, 2022) (discussing the more liberal post-amendment standard under the NYSHRL); *see also* A8421/S6577 (as amended by S6594/A8424).  As to the NYCHRL, "courts must construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-CV-2011, 2022 WL 3100663, at *8 (S.D.N.Y. Aug. 4, 2022) (quoting *Leroy v. Delta Airlines, Inc.*, 36 F.4th 469, 474 (2d Cir. 2022)).  However, under the NYCHRL, a "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (acknowledging standard for NYCHRL discrimination claims).  To establish a claim under the NYCHRL, the plaintiff must show that the employer treated him or her "less well, at least in part for a discriminatory reason." *Mihalik*, 715 F.3d at 110 n.8; *Harris*, 2022 WL 3100663, at *8 ("To count as being treated 'less well,' a plaintiff must merely plausibly allege 'differential treatment that is more than trivial, insubstantial, or petty.'" (quoting *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020))).  Even under this more

---

[9] The amendments apply to claims accruing after October 11, 2019, *see Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019), and therefore apply to Plaintiff's claims, which accumulated on or after October 15, 2019.  (*See generally* Am. Compl.)

forgiving pleading standard, a plaintiff must still plausibly allege that he was treated less well "at least in part '*because* of [his] [belonging to a protected class].'"  *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39, 40 n.27 (App. Div. 2009)).

Because the standard for pleading a disability discrimination claim under the NYSHRL and NYCHRL is more lenient than the ADA standard, Plaintiff sufficiently pleads NYSHRL and NYCHRL disability discrimination claims.  *See Jones*, 838 F. App'x at 644 n.1 (holding that courts considering NYCHRL claims must "constru[e] [NYCHRL's] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible" (quoting *Ya-Chen Chen*, 805 F.3d at 75)).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's ADA, NYSHRL, and NYCHRL discrimination claims.[10]

### ii.   Title VII, NYSHRL, and NYCHRL race, age, and gender discrimination claims

#### 1.   Title VII race and gender claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  To establish a

---

[10]  Defendants also argue that Plaintiff's claim should be dismissed because JetBlue terminated Plaintiff "based on a legitimate, non-discriminatory reason."  (Defs.' Mem. 11.)  While this is a relevant consideration on a motion for summary judgment, it is not one that the Court considers at the motion to dismiss stage.  *Cf. McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (noting that at the summary judgment stage, a "plaintiff must establish a prima facie case; the employer must offer . . . a legitimate non-discriminatory reason for the discharge; and the plaintiff must then . . . carry the burden of persuasion that the proffered reason is a pretext").  At the motion to dismiss stage, a plaintiff's burden is "minimal."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)); *see Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) ("[A] plaintiff's burden to establish an initial prima facie case is, by design, 'minimal and de minimis.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005))).

prima facie case of employment discrimination under Title VII, a plaintiff must show that: (1) "[he] is a member of a protected class; (2) [he] was qualified for the position [he] held; (3) [he] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013); *see Zheng-Smith v. Nassau Health Care Corp.*, No. 20-CV-3544, 2021 WL 4097316, at *1 (2d Cir. Sept. 9, 2021) (listing the four criteria to establish a prima facie case of discrimination under Title VII); *see also Doe v. City of New York*, 473 F. App'x 24, 27 (2d Cir. 2012) (same). A plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)); *see Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, at *2 (2d Cir. Mar. 16, 2022) (affirming that the facts required to form a prima facie discrimination case under Title VII "need only give plausible support to a minimal inference of discriminatory motivation"); *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) ("A plaintiff's burden to establish an initial prima facie case is, by design, 'minimal and de minimis.'" (quoting *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005)))

While the parties do not dispute that (1) Plaintiff, as a Black male, belongs to protected classes under Title VII, (2) Plaintiff was qualified for his position with JetBlue, and (3) Plaintiff suffered adverse employment actions, the parties dispute whether the adverse employment actions occurred under circumstances giving rise to an inference of discrimination on the basis of either race or gender. However, even under Plaintiff's "minimal" burden at the motion to dismiss stage, Plaintiff does not allege any facts that would permit the Court to infer causation between Plaintiff's membership in any protected class and the adverse employment actions he faced. Plaintiff alleges that he was "treated differently because he is an African American male,"

17

(Am. Compl. ¶ 187), that "Plaintiff's . . . race . . . and gender were factors in Plaintiff's termination," (*id.* ¶ 182), and that he was "discriminated against because of his race . . . and gender," (*id.* ¶ 185), but provides no facts to support his conclusory assertions. *See Vega*, 801 F.3d at 84 (stating that "a discrimination complaint . . . must at a minimum assert nonconclusory factual matter" (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014))); *Richards v. Dep't of Educ. of N.Y.C.*, No. 21-CV-338, 2022 WL 329226, at *6 (S.D.N.Y. Feb. 2, 2022) (stating that a complaint "must offer more than 'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement'" in order to survive dismissal (quoting *Twombly*, 550 U.S. at 555, 557)); *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 554 (W.D.N.Y. 2016) ("Plaintiff has failed to meet her pleading burden of supporting an inference of discriminatory intent, because her claims are not supported by anything other [than] her own conclusory assertions that she was discriminated against on the basis of her race and national origin.  Plaintiff has failed to plausibly plead a minimal inference of discriminatory motivation.").

    While Plaintiff alleges that he was treated less favorably than "white similarly[-]situated Ground Operations employees" and other members outside of his protected classes, (Am. Compl. ¶ 179), Plaintiff fails to allege that any of the identified employees engaged in comparable conduct or how they allegedly received preferential treatment.  *See Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (finding that the plaintiff failed to assert a Title VII discrimination claim because the plaintiff did not sufficiently allege that allegedly similarly-situated employees engaged in comparable conduct).

    Thus, Plaintiff fails to state a Title VII discrimination claim on the basis of his race or gender.

### 2. NYSHRL and NYCHRL age, gender, and race discrimination claims

Plaintiff fails to allege that he was treated "less well" as a result of his age, gender, or race and provides no facts that would permit the Court to infer differential treatment on these bases. *See Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 242 (S.D.N.Y. 2017) ("Nevertheless, a plaintiff must still 'plead facts sufficient to support an inference that he has been treated less well at least in part *because of* a protected trait." (quoting *Bell v. McRoberts Protective Agency, Inc.*, No. 15-CV-0963, 2016 WL 7192083, at *5 (S.D.N.Y. Dec. 12, 2016))). Plaintiff therefore fails to plead NYSHRL or NYCHRL age, gender or race discrimination claims.[11]

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's Title VII gender and race claims and his NYSHRL and NYCHRL age, gender, and race claims.

### c. Failure-to-accommodate claim under the ADA

Defendants argue that Plaintiff's failure-to-accommodate claim should be dismissed because an air carrier should not be lawfully required to waive its post-accident drug and alcohol testing policies where an employee claims to be medically unable to complete this testing and where a third-party medical provider confirms that the employee's claims are invalid. (Defs.' Mem. 11–16.) They contend that JetBlue had no obligation to accommodate Plaintiff or engage in the interactive accommodations process because such an accommodation would mean deviating from the DOT's drug and alcohol testing procedures. (*Id.* at 14.)

---

[11] Because the NYSHRL was amended with the directive that "its provisions should be construed liberally," *Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734, 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020), and to bring the standard "closer to that of the [NYCHRL]," *Livingston v. Roosevelt Union Free Sch. Dist.*, No. 17-CV-4189, 2020 WL 1172642, at *11 n.5 (E.D.N.Y. Jan. 15, 2020), and although the Court recognizes that the NYSHRL and NYCHRL standards are not interchangeable, because the NYSHRL was amended to more closely resemble the NYCHRL, the Court analyzes both claims under the NYCHRL standard.

Plaintiff contends that Defendants "had a duty to provide a reasonable accommodation" and that he immediately and directly notified his employer that he was in need of a reasonable accommodation due to his medical condition.  (Pl.'s Opp'n 6.)  He notes that Ayala "refused to engage in an interactive dialogue to assess Plaintiff's needs," (*id.*), and that Green also failed to engage in an interactive dialogue, investigate Plaintiff's claims of unfair treatment, or report Plaintiff's claims to human resources.  (*Id.* at 20.)  Plaintiff argues that providing him with an accommodation would not have been an undue burden and in fact would have complied with JetBlue's own policy, which notes that the alcohol test can be done by saliva or breath.  (*Id.* at 7.)

To establish a prima facie case of failure to accommodate under the ADA, the plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation"; and (4) "his employer refused to make a reasonable accommodation."  *Woolf*, 949 F.3d at 93 (first citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006); and then citing *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)); *see also Knope v. Garland*, No. 20-CV-3274, 2021 WL 5183536, at *2 (2d Cir. Nov. 9, 2021) (listing four-pronged test to establish a prima facie case of discrimination based on an employer's failure to accommodate); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (same).  In addition, "the plaintiff must show 'the connections between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action.'"  *Clark v. Coca-Cola Bevs. Ne., Inc.*, No. 20-CV-4040, 2022 WL 92060, at *4 (2d Cir. Jan. 10, 2022) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019)); *Knope*, 2021 WL 5183536, at *2 (same).  Reasonable accommodation "may include . . . modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of

devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position." *Molina v. City of Rochester*, 764 F. App'x 49, 51 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).  In a failure-to-accommodate claim, "the plaintiff 'bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment.'" *McMillan*, 711 F.3d at 126 (alterations in original) (quoting *McBride*, 583 F.3d at 97).  "This burden is not heavy: 'It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" *Id.* at 127 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

The parties do not dispute that (1) JetBlue is subject to the ADA, (2) Plaintiff was disabled within the meaning of the ADA, and (3) Plaintiff was otherwise qualified to perform the essential features of his job.  In addition, Plaintiff sufficiently alleges that Defendants were aware of his disability and his requests for reasonable accommodations.  (*See* Am. Compl. ¶¶ 70–71 ("Plaintiff informed . . . the drug test [administrator] that he was asthmatic" and that "he was having difficulty breathing due to his asthma."), ¶¶ 79–81 ("Plaintiff informed Ayala that . . . [h]e was asthmatic," "that he was coughing, having difficulty breathing, and his chest was tightening," and "asked Ayala if he could take the breathing test another way since he was coughing and his chest was tightening."), ¶ 146 ("Plaintiff . . . explained [to Green] that he had trouble breathing into the 'breathalyzer' due to his asthma and other medical ailments."), ¶ 161 (providing the October 29, 2019 email that Plaintiff wrote to the People Department and Crew Relations regarding his asthma and surgery to remove nasal polyps, which led to the results for the breathalyzer test coming back insufficient on three occasions).)

Further, Plaintiff sufficiently alleges a potential accommodation that Defendants failed to provide in the form of a saliva test. After informing a JetBlue employee during his breathalyzer test that he could not breathe and therefore could not complete the test due to his disability, Defendants could have performed a saliva test and then, as Dr. Patel recommended in her report to JetBlue, repeated the breathing test if necessary weeks after Plaintiff's surgery. (Am. Compl. ¶ 121.) JetBlue's own policy states that alcohol tests "are done by saliva or breath," but "Defendants did not conduct a saliva test" even after Plaintiff asked Ayala if "he could take the breathing test another way." (*Id.* ¶¶ 81, 200–01.) Defendants cite to DOT regulations which provide that their testing could have been done by saliva or breath. (*See* Defs.' Mem. 13 ("As an employee, you are considered to have refused to take an alcohol test if you '[f]ail to provide an adequate amount of saliva or breath for any alcohol test required by this part or DOT agency regulations[.]'" (quoting 49 CFR §40.261(a)(3))).)

Moreover, this accommodation is reasonable and does not impose an undue hardship, as it is identified as an alternative by both DOT and JetBlue policies. Thus, Plaintiff has established a clear connection between the failure to grant this accommodation, his inability to return to work, and his suspension and termination. Plaintiff has therefore met his burden at the motion to dismiss stage. *See Limauro v. Con. Ed. Co. of N.Y., Inc.*, No. 20-CV-3558, 2021 WL 466952, at *8 (S.D.N.Y. Feb. 9, 2021) ("All that plaintiffs must do at the motion to dismiss stage is plead the existence of a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" (quoting *Shaywitz v. Am. Bd. of Psychiatry and Neurology*, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009))); *Novick v. Village of Wappingers Falls*, 376 F. Supp. 3d 318, 337 (S.D.N.Y. 2019) (stating that at the motion to dismiss stage, a plaintiff "bears only the burden of identifying an accommodation" (quoting *Borkowski*, 63 F.3d at 139)).

Accordingly, the Court denies Defendants' motion as to Plaintiff's ADA failure-to-accommodate claim.

### d.   Hostile work environment claims under the ADA, Title VII, NYSHRL, and NYCHRL

Defendants argue that the Amended Complaint does not appear to assert a hostile work environment claim, but even if it did, such a claim would fail and should be dismissed because it is "bereft of any factual allegations regarding any relevant decision-maker's supposed discriminatory animus." (Defs.' Mem. 8 n.3.)

Plaintiff alleges that JetBlue engaged in unlawful employment practices under Title VII, NYCHRL, and NYSHRL by "causing a hostile work environment," (Am. Compl. ¶¶ 212, 225, 238). Plaintiff also alleges that JetBlue "created a hostile environment in violation of Plaintiff's rights under the ADA." (*Id.* ¶ 264.) Plaintiff addresses his hostile work environment claim in two lines of his opposition brief, noting that the Court should not "set[] the bar too high." (Pl.'s Opp'n 19 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).)

### i.   ADA and Title VII hostile work environment claims

"The analysis of hostile work environment claims under [the ADA] is the same as the analysis under Title VII." *Harris*, 2022 WL 3100663, at *12 n.16. To prevail on a hostile work environment claim under the ADA or Title VII, the plaintiff must show "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox*, 918 F.3d at 74 (alteration in original) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)); *see Hawkins-El v. N.Y.C. Transit Auth.*, No. 18-CV-7167, 2021 WL 4222400, at *7 (E.D.N.Y. Sept. 16, 2021) (describing test for finding a hostile work environment under the ADA); *Tsatsani v. Walmart, Inc.*, No. 19-CV-9063, 2020 WL

23

6688939, at *11 (S.D.N.Y. Oct. 26, 2020) ("A plaintiff asserting a hostile work environment claim under the ADA 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'" (quoting *Fox*, 918 F.3d at 74)); *see also Tillery v. N.Y.S. Off. of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 27 (2d Cir. 2018) (holding that to establish a hostile work environment claim under Title VII, "a plaintiff must produce enough evidence to show that 'the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" (alterations in original) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010))); *Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (holding that conduct must be both objectively severe or pervasive and subjectively perceived to be abusive). Under the totality of the circumstances, a plaintiff must show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)); *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) ("[W]e must consider . . . 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993))).

### 1. Title VII claim

Plaintiff has failed to plausibly allege a hostile work environment claim under Title VII. Plaintiff fails to allege that any allegedly discriminatory conduct was a result of Plaintiff's race

or gender and thus his claim fails. *See Tillery*, 739 F. App'x at 27 ("A plaintiff must also demonstrate that []he was subjected to the hostility because of [his] membership in a protected class." (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999))); *Alfano*, 294 F.3d at 377 ("It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."); *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 498 (E.D.N.Y. 2019) (dismissing the plaintiff's Title VII hostile work environment claims because the plaintiff failed to allege "that a hostile work environment was created and existed because of [her] protected status" (alteration in original) (quoting *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 418 (E.D.N.Y. 2013))).

Accordingly, the Court dismisses Plaintiff's Title VII hostile work environment claim.

### 2. ADA claim

Plaintiff plausibly alleges an ADA hostile work environment claim. Plaintiff alleges that (1) he had to take the breathalyzer test despite his complaints of asthma and nasal polyps as well as tightness in the chest, (Am. Compl. ¶¶ 69–74); (2) Ayala "dismissively told [him]" that if he could not blow into the breathalyzer, they would "have to part ways," and suspended him, (*id.* ¶¶ 81, 91); (3) he was ordered to visit the Clinic, which is over two hours away from him, despite his recovery from surgery, (*id.* ¶¶ 96–97); (4) he arrived at the Clinic and there was no appointment scheduled for him, (*id.* ¶¶ 103–04); (5) Dr. Patel recommended both that JetBlue direct Plaintiff to see a pulmonologist and avoid testing him for several weeks following his surgery, (*id.* ¶¶ 120–21); (6) Green refused to consider his medical conditions during the phone call when he terminated Plaintiff, (*id.* ¶¶ 147–51); and (7) his email to Crew Relations and the People Department complaining of disability discrimination was ignored, (*id.* ¶¶ 161–64). Most

25

significantly, Plaintiff alleges that he was ultimately terminated as a result of these actions.  (*Id.* ¶ 167.)  "Even an isolated act may be so serious that it requires the conclusion that the terms and conditions of employment were altered."  *Fox*, 918 F.3d at 74; *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 606 (2d Cir. 2006) ("[A] single incident was so severe that it could have created a hostile work environment even in isolation, unrepeated and unaccompanied by other conduct."); *Guerrero Toto v. NorthStar Demolition & Remediation*, 366 F. Supp. 3d 449, 465 (W.D.N.Y. 2019) (same).  Plaintiff's termination was sufficiently "serious" that it rises to the level of severity or pervasiveness required for a claim.  *Alfano*, 294 F.3d at 374 (stating that an isolated act must be "very serious" to constitute a hostile work environment claim).  Accordingly, Plaintiff has plausibly pled a hostile work environment claim under the ADA.

Accordingly, the Court dismisses Plaintiff's Title VII hostile work environment claim but denies Defendants' motion as to his ADA hostile work environment claim.

### ii.   NYSHRL and NYCHRL hostile work environment claims

Harassment constitutes an "unlawful discriminatory practice" where "it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories."  *Wray v. Westchester Med. Ctr. Advanced Physician Servs., P.C.*, No. 21-CV-394, 2022 WL 3214924, at *10 (S.D.N.Y. Aug. 9, 2022).  The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are governed by N.Y.C. Admin. Code § 8–107(1)(a).  *See Nguedi v. Fed. Reserve Bank of N.Y.*, 813 F. App'x 616, 617–18 (2d Cir. 2020) (noting when courts review either discriminatory treatment or hostile work environment claims under the NYCHRL, they must "analyze whether a plaintiff is treated 'less well' because of a discriminatory intent" (quoting *Mihalik*, 715 F.3d at 110)); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261

(E.D.N.Y. 2012) ("Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims.").  The federal "severe or pervasive standard of liability" does not apply to NYCHRL claims. [12]  *Mihalik*, 715 F.3d at 113.

### 1.   Age, gender, and race hostile work environment claims

Plaintiff fails to allege any facts that would permit the Court to infer that he experienced a hostile work environment on the basis of race, gender, or age, and therefore, even under the reduced requirements for NYSHRL and NYCHRL hostile work environment claims, Plaintiff fails to state NYSHRL or NYCHRL race, gender, or age hostile work environment claims.

### 2.   Disability hostile work environment claim

However, under this more liberal standard, which requires analyzing whether a plaintiff is treated "less well" and does not require a finding of "severe or pervasive" conduct, Plaintiff sufficiently alleges facts in support of NYSHRL and NYSHRL hostile work environment claims on the basis of disability.  In his Amended Complaint and in his opposition, Plaintiff alleges that Defendants "creat[ed] a hostile work environment" because of his requests for accommodation for his disability and that Green and Ayala, among others, treated him less well by ignoring his complaints and requests for accommodation.  (Am. Compl. ¶¶ 81, 147–51, 238.)  At the motion to dismiss stage, this is sufficient to plead NYSHRL and NYCHRL hostile work environment claims based on his disability.  *See Kugel v. Queens Nassau Nursing Home Inc.*, 568 F. Supp. 3d 253, 264 (E.D.N.Y. 2021) (finding that the plaintiff's hostile work environment claim on the basis of disability succeeded "[u]nder NYCHRL's more forgiving standard"); *Lebowitz v. N.Y.C.*

---

[12]  As noted above, for claims filed on or after October 11, 2019, the NYSHRL was amended to more closely resemble the NYCHRL.  The NYSHRL now provides that harassment is unlawful "regardless of whether such harassment would be considered severe or pervasive." N.Y. Exec. L. § 296(1)(h).

*Dep't of Educ.*, 407 F. Supp. 3d 158, 183 (E.D.N.Y. 2017) (permitting NYCHRL claims to

proceed where the plaintiffs claimed that they received differential treatment).

Thus, the Court dismisses Plaintiff's NYSHRL and NYCHRL age, gender, and race

hostile work environment claims but denies Defendants' motion to dismiss Plaintiff's disability

hostile work environment claim.

**e. ADA retaliation claim**

Defendants argue that Plaintiff's retaliation claim under the ADA fails for a number of

reasons.[13]  (Defs.' Mem. 16.)  First, Plaintiff does not plausibly allege any retaliatory animus

---

[13]  Plaintiff also brings retaliation claims under Title VII, the NYSHRL, and NYCHRL, all of which fail.  While Plaintiff brings a claim under Title VII, the only potential protected activities he alleges are his requests for accommodation on the basis of his disability, as he admits in his opposition papers.  (Pl.'s Opp'n 9.)  Because "Title VII does not prohibit discrimination or retaliation on the basis of a disability," *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 152 (E.D.N.Y. 2018), the Court dismisses Plaintiff's Title VII retaliation claim.  *See Risco v. McHugh*, 868 F. Supp. 2d 75, 111 (S.D.N.Y. 2012) ("[A] complaint about disability-related discrimination cannot form the basis of a retaliation claim under Title VII[.]"); *Muszak v. Sears, Roebuck & Co.*, 63 F. Supp. 2d 292, 300 (W.D.N.Y. 1999) ("[A] Title VII retaliation claim must be for actions protected by Title VII, and, quite simply (unlike the ADA that has its own retaliation prohibition) Title VII does not protect a request for an accommodation on the basis of an alleged disability." (footnotes omitted)).  Further, "[u]nder both New York State and New York City Human Rights Laws, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim."  *Witchard v. Montefiore Med. Ctr.*, 960 N.Y.S.2d 402, 403–04 (App. Div. 2013); *see D'Amico v. City of New York*, 73 N.Y.S.3d 540, 558–59 (App. Div. 2018) (same).  While the New York City Council amended the NYCHRL to "make[] [it] clear that requesting a reasonable accommodation is a protected activity," *Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020), the amendment became effective on November 11, 2019 and is not retroactive; thus it does not apply to Plaintiff's claims, which accrued in October of 2019 through his termination on November 1, 2019.  *See Limauro v. Con. Ed. Co. of N.Y., Inc.*, No. 20-CV-3558, 2021 WL 466952, at *10 (S.D.N.Y. Feb. 9, 2021) ("But that amendment had not yet taken effect at the time [the plaintiff] made his [accommodation] requests to [his employer], and there is no indication that the New York City Council intended for the amended NYCHRL to apply retroactively.  Thus, [the court] must adhere to the New York courts' prior interpretation of the statutes." (citation omitted)); *Mejia v. City of New York*, No. 17-CV-2926, 2020 WL 2837008, at *13 (E.D.N.Y. May 30, 2020) ("[A] request for a reasonable accommodation is not a protected activity for purposes of a retaliation claim [under the NYSHRL or NYCHRL]." (quoting *Witchard*, 960 N.Y.S.2d at 403–04)).  The Court therefore dismisses Plaintiff's NYSHRL and NYCHRL retaliation claims.

from Defendants.  (*Id.*)  Second, Defendants required him to submit to drug and alcohol testing before he allegedly engaged in any protected activity.  (*Id.* at 17.)  Third, Defendants terminated him based on their understanding and a "third-party medical provider's evaluation of Plaintiff" that Plaintiff was able to successfully complete the breathalyzer but failed to do so. (*Id.* at 17–18.)  Fourth, the retaliation claim is redundant of Plaintiff's failure-to-accommodate claim.  (*Id.* at 18.)

Plaintiff argues that requesting a reasonable accommodation constitutes protected activity and that he did so before he was suspended.  (Pl.'s Opp'n 9.)  Plaintiff also contends that he was suspended without pay within hours of requesting a reasonable accommodation.  (*Id.* at 9–10.)

To establish a prima facie case of retaliation under the ADA, a plaintiff "must show that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action." *Ibela v. Allied Universal*, No. 21-CV-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (quoting *Fox*, 918 F.3d at 72–73); *Clark*, 2022 WL 92060, at *5 (same); *Norman v. NYU Langone Health Sys.*, No. 20-CV-3624, 2021 WL 5986999, at *4 (2d Cir. Dec. 17, 2021) (discussing factors of an ADA retaliation claim).  "A plaintiff bears only a minimal burden in making this prima facie showing."  *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (first citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); and then citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

The Court considers each factor below.

### 1.   Protected activity

"Activities protected by the ADA include complaints of ADA discrimination, including complaints . . . that the employer's actions violated the ADA, and requests for reasonable

accommodation." *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017); *see Treglia*, 313 F.3d at 720 ("[A]ttempts to assert . . . rights against discrimination are protected activities."); *Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) (same); *see also Fox*, 918 F.3d at 73 (stating that the plaintiff engaged in a protected activity when he sent an "email and administrative complaint"); *Summa v. Hofstra Univ.*, 708 F.3d 115, 126–27 (2d Cir. 2013). "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." *Jagmohan v. Long Island R.R. Co.*, 622 F. App'x 61, 63–64 (2d Cir. 2015) (citing *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). "Requesting a reasonable accommodation of a disability is an ADA-protected activity." *Rodriguez v. Atria Senior Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002)); *see Ibela*, 2022 WL 1418886, at *2 ("Seeking a reasonable accommodation constitutes protected activity under the ADA."); *Weixel*, 287 F.3d at 149 ("[P]laintiffs . . . allege that they were seeking reasonable accommodation [on the basis of] disability — which constitutes protected activity under [the ADA].").

Plaintiff has adequately alleged that he engaged in protected activity. On October 15, 2019, Plaintiff asked Lall and Ayala several times whether there was another way to take the breathalyzer test because his chest was getting tighter and he suffered from asthma. (Am. Compl. ¶¶ 70–74, 80–81, 87.) On October 25, Plaintiff told Ayala that he was "being treated unfairly" and that "he was going to reach out for help and report him." (*Id.* ¶ 136.) On October 27, Plaintiff again asked if anything could be done "such as taking the test again or [a] different test." (*Id.* ¶ 138.) On October 28, Plaintiff explained the situation to Green and asked him to "take his medical condition into consideration." (*Id.* ¶¶ 146–48.) On October 29, he emailed the

People Department, Crew Relations, and others, stating that he had been unable to perform his

breathalyzer test and stating that his medical documentation had not been "taken into

consideration." (*Id.* ¶¶ 161–62.) These requests for reasonable accommodation and complaints

of unfair treatment constitute protected activity. *See Treglia*, 313 F.3d at 720 ("[A]ttempts to

assert . . . rights against discrimination are protected activities."); *see Clark v. Jewish Childcare*

*Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (noting that requesting a reasonable

accommodation of a disability is an ADA-protected activity); *Vale v. Great Neck Water*

*Pollution Control Dist.*, 80 F. Supp. 3d 426, 439 (E.D.N.Y. 2015) ("Requests for disability

accommodation and complaints, whether formal or informal, about working conditions related to

one's alleged disability are protected activities." (quoting *Gorbea v. Verizon N.Y., Inc.*, No. 11-

CV-3758, 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014))).

### 2. Adverse employment actions

"In the context of . . . ADA retaliation claims, [the Second Circuit has] described an

adverse employment action as 'a materially adverse change in the terms and conditions of

employment.'" *Baum v. Rockland County*, 161 F. App'x 62, 64 (2d Cir. 2005). Adverse

employment actions include, but are not limited to, suspension and discharge from employment.

*See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223–24 (2d Cir. 2001) (holding

that for purposes of an ADA retaliation claim, an "adverse employment action" broadly includes

"discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"

(quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999))); *Muller v. Costello*, 187 F.3d 298,

315 (2d Cir. 1999) (holding that other adverse actions beyond discharge could be considered for

purposes of an ADA retaliation claim); *Weissman v. Dawn Joy Fashions Inc.*, 214 F.3d 224, 234

(2d Cir. 2000) (finding that claims of refusal to rehire or denials of employment were adverse actions for purposes of ADA retaliation claims).

Plaintiff alleges that he was suspended on October 15, 2019, (Am. Compl. ¶ 91), and terminated on November 1, 2019, (*id.* ¶ 167).  Both constitute adverse employment actions.  *See Rodriguez*, 887 F. Supp. 2d at 512 ("Of course, there is no dispute that termination is an adverse employment action."); *Clark*, 96 F. Supp. 3d at 262 ("[The] [p]laintiff's termination constitutes . . . an adverse decision taken against [the] [p]laintiff."); *see also Rosenfield v. N.Y.S. Div. of Veterans' Affs.*, No. 18-CV-1299, 2020 WL 8911057, at *6 (N.D.N.Y. May 28, 2020) (stating that "defendants' suspension of plaintiff without pay" was an adverse action); *Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 485–86 (E.D.N.Y. 2016) (considering a suspension to be an adverse action for purposes of retaliation under the ADA); *Lovejoy-Wilson*, 263 F.3d at 223–24 (finding that the plaintiff established a prima facie case of retaliation under the ADA where she was suspended).

### 3.   Causal connection

To establish a prima facie case of retaliation under the ADA, a plaintiff must show "that a causal connection existed between the protected activity and the adverse action."  *Baum*, 161 F. App'x at 64 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)).  A causal connection in retaliation claims can be shown: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Natofsky*, 921 F.3d at 353 (quoting *Littlejohn*, 795 F.3d at 319).  The plaintiff must provide "sufficient evidence of a causal nexus between [his] protected activity and the

alleged adverse employment actions he suffered." *Clark*, 2022 WL 92060, at *5 (quoting *Fox*, 918 F.3d at 73).  "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."  *Lovejoy-Wilson*, 263 F.3d at 224 (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see Ibela*, 2022 WL 1418886, at *2 ("[A] plaintiff can indirectly establish a causation connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." (quoting *Gorman-Bakos v. Cornell Co-Op Ext. of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001))) (finding that a gap of two months between a protected activity and adverse action was sufficient to plausibly allege causation); *Pistello v. Bd. of Educ.*, 808 F. App'x 19, 21–22 (2d Cir. 2020) (considering dates of protected activities in relation to adverse employment actions and permitting the plaintiff's ADA retaliation claim to proceed).

Plaintiff requested a reasonable accommodation to the breathalyzer test on October 15, 2019, and that same evening, he was suspended.  (Am. Compl. ¶¶ 74, 81, 87, 91.)  In addition, Plaintiff made requests for reasonable accommodations on October 25, 27, 28, and 29, complained about unfair treatment, and was terminated effective November 1, 2019.  (*Id.* ¶¶ 136, 136–39, 145–49, 161–62, 167.)  At the pleadings stage, this temporal proximity is sufficient to infer causation, *see Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *22 (E.D.N.Y. Sept. 21, 2015) ("The close temporal proximity between the complaints and [the plaintiff's] termination is sufficient to meet her minimal burden at this stage of the litigation."), particularly because Plaintiff had not faced adverse job actions or reprimands prior to his requests for reasonable accommodation, *cf. Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job

actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). *See Clark*, 96 F. Supp. 3d at 262 (finding that a gap of "several days" between the protected activity and the adverse action was sufficient to satisfy the causal element to establish a prima facie case of ADA retaliation).

Accordingly, the Court finds that Plaintiff has sufficiently alleged a retaliation claim under the ADA and denies Defendants' motion to dismiss this claim.

### f.  NYCHRL interference claim, NYSHRL and NYCHRL aiding and abetting claims, and state law tort claims

Defendants argue that because Plaintiff has failed to rebut Defendants' arguments or address his NYCHRL interference claim, NYSHRL and NYCHRL aiding and abetting claims, and state law claims for NIED and IIED, he has waived these claims.[14]  (Defs.' Reply 1–2.)

Plaintiff has not addressed Defendants' arguments, and accordingly, the Court finds that Plaintiff, who is represented by counsel, has abandoned these claims. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) ("Plaintiffs' failure to oppose [d]efendants' specific argument in a motion to dismiss is deemed waiver of that issue." (quoting *Kao v. Brit. Airways, PLC*, No. 17-CV-232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018))); *MYL Litig. Recovery I LLC v. Mylan N.V.*, No. 19-CV-1799, 2020 WL 1503673, at *7 (S.D.N.Y. Mar. 30, 2020) ("[The plaintiff] has failed to respond to this argument in its opposition. Accordingly, any argument opposing [the defendant's] position here is waived." (citing *Kao*,

---

[14]  Plaintiff alleges that Defendants violated the NYCHRL provision that prohibits individuals from "coerc[ing], intimidat[ing], threaten[ing] or interfer[ing] with[] any person in the exercise or enjoyment of . . . any right granted or protected."  (Am. Compl. ¶¶ 250–53.)  In addition, Plaintiff brings NYSHRL and NYCHRL aiding and abetting claims, alleging that Defendants aided and abetted discriminatory and retaliatory conduct.  (*Id.* ¶¶ 228–31, 246–49.) Finally, Plaintiff brings NIED and IIED claims on the grounds that the "conduct described . . . was extreme and outrageous and severely affected Plaintiff's sense of self and emotional well-being."  (*Id.* ¶¶ 278–79.)

2018 WL 501609, at *5)); *Levy v. Maggiore*, 48 F. Supp. 3d 428, 452 (E.D.N.Y. 2014)

("Plaintiff does not respond to this argument and the [c]ourt therefore construes Plaintiff's failure

to respond as an abandonment of this claim."); *see also Jackson v. Fed. Express*, 766 F.3d 189,

196 (2d Cir. 2014) ("Generally, but perhaps not always, a partial response reflects a decision by

a party's attorney to pursue some claims or defenses and to abandon others.  Pleadings often are

designed to include all possible claims or defenses, and parties are always free to abandon some

of them.").

### III.  Conclusion

For the reasons stated above, the Court grants Defendants' motion and dismisses

Plaintiff's (1) Title VII discrimination claims based on gender and race and NYSHRL and

NYCHRL discrimination claims based on age, gender, and race; (2) Title VII hostile work

environment claims based on gender and race, and NYSHRL and NYCHRL hostile work

environment claims based on age, gender, and race; (3) Title VII, NYSHRL, and NYCHRL

retaliation claims; and (4) NYCHRL interference claim; NYSHRL and NYCHRL aiding and

abetting claims; and state law claims for IIED and NIED.

The Court denies Defendants' motion as to Plaintiff's (1) ADA discrimination claim; (2) NYSHRL and NYCHRL disability discrimination claims; (3) ADA failure-to-accommodate claim; (4) ADA hostile work environment claim; (5) NYSHRL and NYCHRL hostile work environment claims based on disability; and (6) ADA retaliation claim.

Dated: September 16, 2022
      Brooklyn, New York

SO ORDERED:


_____ s/ MKB _____
MARGO K. BRODIE
United States District Judge

36